(34 Misc. Rep. 385.)

### McLOUGHLIN v. NAUGLE et al.

(Supreme Court, Special Term, New York County. March, 1901.)

ATTACHMENT—AFFIDAVIT.

> Code Civ. Proc. § 636, subd. 1, providing that an affidavit in support of an attachment must show that plaintiff is entitled to recover the sum stated therein, is not complied with by an affidavit stating that a certain amount is due, but plaintiff must show that the amount claimed is, presumptively at least, owing to him.

Action by Joseph F. McLoughlin against Edward H. Naugle and others. Motion to vacate attachment granted.

Carter, Hughes & Dwight, for the motion.
Anderson & Anderson, opposed.

SCOTT, J. Motion to vacate attachment upon the papers on which it was granted. The action is for a large sum of money alleged to be the reasonable value of plaintiff's services, rendered to defendants, at their request, in procuring for them a contract for the construction of a railroad. It is not alleged that any specific compensation or rate of compensation was agreed upon, the contention being that

under plaintiff's employment and his performance of the services he became entitled to the reasonable value of such services, which he fixes at the sum sued for. The motion to vacate the attachment is made upon the ground that the affidavits do not contain facts upon which the court can determine that the plaintiff is presumptively entitled to recover the sum claimed, or any specific sum. Section 636 of the Code requires that the affidavit must show that the plaintiff is entitled to recover a sum stated therein. This requirement is not satisfied by merely stating that an amount is due. The plaintiff must go further, and show that the amount claimed is, presumptively at least, owing to him. Hence arises the distinction that has so often been pointed out between the necessary allegations in a complaint and those which are required to be contained in an affidavit to procure an attachment. The one need contain only allegations of fact; the other must contain evidentiary statements sufficient to sustain the allegations of fact. Thus, although a complaint may contain all the allegations necessary to establish a cause of action for some sum of money as damages for breach of a contract, still no attachment can be sustained unless it be also shown by affidavit, with reasonable certainty, that the damages amount to a stated sum. Westervelt v. Agrumaria Sicula, etc., 58 Hun, 147, 11 N. Y. Supp. 340; Bloomingdale v. Cook, 35 App. Div. 360, 54 N. Y. Supp. 924. I cannot accede to the proposition advanced in behalf of the plaintiff that the requirements of the Code, as construed and expounded by the cases above cited, and many others of like import, are fully satisfied by showing that plaintiff is presumptively entitled to substantial, as contradistinguished from nominal, damages, without showing the probable amount of the damages. It has been said that the remedy by attachment is an extreme one. That it is "the issuing of an execution before judgment, and the rights of the absent defendant should certainly be protected to the extent that the provisions of the Code require." Belden v. Wilcox, 47 Hun, 331. The true rule I understand to be that the specific sum presumptively due must be established by competent proof. Concentrator Co. v. Jackson, 13 Abb. N. C. 476. The authority cited by plaintiff in support of his construction of the Code does not sustain his contention. The opinion is not reported, but the reporter's headnote, which may be presumed to fairly summarize the opinion, goes no further than to state the rule to be that attachments may issue in actions on contracts for unliquidated damages when a proper disclosure of the grounds of the claim supplies "practicable means for determining the amount." U. S. v. Graff, 4 Hun, 634. The plaintiff has attempted to comply with the requirement that he shall show presumptively that he is entitled to recover the amount claimed, and the maintenance or vacation of his attachment depends upon whether or not he has succeeded in this effort. The contract obtained by defendants, and which plaintiff alleges he was instrumental in obtaining for them, was for the construction of a railway in the state of Tennessee of a total length of 230 miles. The contract, which is included among the papers upon which the attachment was granted, is not for a lump or gross sum, but pro-

vides that certain prices shall be paid for certain classes of work, the amount and nature of the work done and the sum due therefor to be determined and certified by the engineer of the construction company, payment therefor to be made one-half in cash and one-half in bonds. Under such a contract it is, of course, impossible to accurately foretell, in advance of the completion of the work, just what the cost will be. The plaintiff produces, however, a copy of a deposition of one Baxter, the president of the railroad company, and a director of the construction company with which the defendants contracted, in which he estimates the cost of the road per mile; and upon this testimony the plaintiff estimates that the total amount to be paid to defendants, if they build the whole 230 miles, will be $2,715,000. It appears, however, that the contract is absolutely effective for only 65 miles, and that whether or not it shall ever become effective for the remainder of the proposed line depends upon the election of the construction company. It does not appear that the company has yet elected to complete the whole work, or whether or not it will ever so elect. The unsigned printed circular attached to plaintiff's affidavit has no probative force whatever. It thus appears that the total amount involved in defendants' contract is wholly undetermined, and, if the value of plaintiff's services in procuring the contract for defendants are to be based in any measure upon the amount involved in the contract,—as broker's services are usually based,—the most important element necessary for fixing the reasonable value of the services is wholly lacking. If the value of the services is to be based upon the work done by plaintiff in his efforts to assist the defendants in procuring the contract, is independent of the amount involved, and dependent only upon the actual services performed, the evidence upon which to form an estimate of the value of such services is still more meager, for no detailed statement is given as to what those services were, except that plaintiff introduced defendants to a director of the construction company. The plaintiff himself swears that $125,000—the amount for which he sues—is a reasonable and proper compensation for his services; that he has been interested before in construction contracts, and is advised by persons who are experienced in such matters that the sum claimed is a reasonable and proper compensation for his services. Clearly, this is a mere conclusion, and of no evidentiary value. He also produces an affidavit from one G. Clinton Gardner, who estimates the value of the services at a like sum. Mr. Gardner shows that he has been general superintendent, general manager, and president of various railroads for brief periods, and that he was once chairman of an investigating committee of the Missouri, Kansas & Texas Railroad Company; that he has been engaged in the direction and management of various other enterprises for upwards of 20 years, and is familiar with the custom in regard to the compensation of persons acting as middlemen or brokers in obtaining contracts for others for the construction of railroads or bridges; and is of the opinion that $125,000 is a reasonable and proper compensation for the services rendered by plaintiff. Such evidence is clearly incompetent, and would not be received in this form upon

the trial of the action. It is true that the proper rate of compensation to be paid brokers may be established by proof of a custom so generally known and followed as to justify the conclusion that the parties· to the contract of brokerage had it in contemplation when the contract was entered into, and in such a case any person who knows of the existence of the custom may testify to it. It must appear, however, that the witness has had such experience in matters of that nature as to induce a belief in his knowledge. Mr. Gardner does not say that he has ever made or been a party to a construction contract. He does not state that there is a customary rate of compensation for a broker's services in inducing such a contract, or what that custom is, or that, if there is any custom, it is well established, and generally known. In short, he wholly fails to qualify himself as an expert as to the value of such services. Unless he is an expert, his opinion upon the subject is valueless. To accept it would be to take his opinion upon a subject as to which it is the duty of the court to form an opinion. It does not even appear whether he bases his opinion upon the assumed construction of 65 miles of road or the problematical construction of 230 miles. My conclusion is that the plaintiff has failed to show that he is entitled to recover the sum specified in his affidavit, or any specific sum, and for that reason the motion to vacate the attachment must be granted, with $10 costs.

Motion granted, with $10 costs.