THE CHAZY MARBLE LIME COMPANY, Respondent, v. MARTIN DEELY and Others, Appellants.

*Attachment — evidence of damages essential — measure of damages for the breach of a contract for the sale of merchandise — the vendee must seek the goods of others.*

While an attachment may be granted where unliquidated damages only are demanded, there must be sufficient evidence of such damages to authorize the court to say, *prima facie,* that the plaintiff has sustained damages to the extent of the amount claimed.

The measure of damages, for the breach by the vendor of a contract for the sale of goods for future delivery, is primarily the difference between the contract price and the price at which the goods could be obtained by the vendee from other dealers.

The vendee is bound to seek the goods in other markets, and it is only upon his failure to obtain them there that he can recover any special damages for loss of profits.

Where, therefore, the vendee in such an action seeks to recover special damages for loss of profits, but does not claim to have made any attempt to procure goods of equal quality from other dealers, he fails to show that he has suffered any damages from the breach of the contract, and is not entitled to an attachment.

APPEAL by the defendants, Martin Deely and others, from an order, made by a justice of the Supreme Court and entered in the office of the clerk of the county of Clinton on the 6th day of May, 1903, denying the defendants' motion to vacate a warrant of attachment theretofore issued in the action.

The action is brought to recover damages for a breach of contract. In the contract the defendants agreed to manufacture and deliver for a period of five years from February 20, 1901, all the magnesia lime of a certain grade and quality that could be produced from four kilns, and to be produced from the best rock and stone taken from the defendants' quarry, shipments to be made as and when requested by the plaintiff, but not to exceed on the average thirty-five tons per day. The plaintiff agreed to buy and pay for the lime when delivered in the amount of at least ten tons per day, and had the right to call for as much as thirty-five tons per day during the life of the contract, and also for a renewal period of five years if the renewal option in said contract was exercised. The complaint recites the refusal of the defendants to perform their contract, the

expenditure of large sums of money and valuable time on behalf of the plaintiff in building up the magnesia lime business and in securing customers and contracts with its customers which were secured, and damage by reason of the defendants' breach to the amount of $30,000. In the affidavit are stated the grounds and sources of the cause of action, to wit, the breach, of the contract set forth, by the defendant, and the large expense incurred by the plaintiff in securing customers, and the contracts made with such customers which would yield large profits to the plaintiff. "That by the terms of the contract which plaintiff had with the defendants and the contracts which plaintiff had with its customers, and plaintiff was receiving a net profit on each ton of the fifty tons per day which it had contracted for and was receiving from the defendants, prior to their breach, the sum of thirty-five cents per ton; and that by reason of plaintiff's contracts and business relations with the railroad companies such profit was being and was subject to a further increase of at least ten cents per ton; that through the efforts of plaintiff with its customers and the magnesia lime trade and the assistance that the plaintiff was able to give its customers, it was receiving an increased profit per ton for such lime, which profits were likely or bound to increase each year for the remainder of the term of said contract, and a further increase was assured if the succeeding term to which said contract could be extended was exercised by the plaintiff, and which the plaintiff intended to so exercise upon the renewal therein contained."

*Vincent P. Donihee,* for the appellants.

*T. B. Cotter,* for the respondent.

SMITH, J.:

Defendants challenge the sufficiency of the papers upon which the attachment rests on the ground that there is no proof of any damage suffered by the plaintiff by reason of the breach of the contract. They do not question the right of the plaintiff to an attachment where unliquidated damages only are demanded. The defendants contend, however, that there must be evidence of such damage sufficient to authorize the court to say *prima facie* that damage to the amount claimed has been sustained by the plaintiff. This posi-

tion would seem to be supported by the authorities. (See *Ladenburg* v. *Commercial Bank*, 87 Hun, 269.) In that case Judge VAN BRUNT, writing for the General Term in the first department, says.: " To sum up the whole matter, it would seem that it is necessary that there should be presented to the court, upon the face of the papers, facts establishing a reasonably certain right of recovery, and where the existence of certain facts is necessary to a recovery, unless such facts are shown, there is presented no right to recover, nor is any cause of action shown to exist." (See, also, *Walts* v. *Nichols*, 32 Hun, 276; *Manufacturers' National Bank* v. *Hall*, 60 id. 466; *Bloomingdale* v. *Cook*, 35 App. Div. 360; *Delafield* v. *Armsby Co.*, 62 id. 262.) In the *Delafield* case the head note reads: " Section 636 of the Code of Civil Procedure, providing that in order to entitle the plaintiff in an action to recover damages for a breach of contract to a warrant of attachment ' the affidavit must show that the plaintiff is entitled to recover a sum stated therein over and above all counterclaims known to him,' requires that the affidavit set out the evidence upon which the plaintiff relies to prove his damages.

" Where the action is brought upon a contract of sale of goods for future delivery the measure of damages, ordinarily, is the difference between the contract price and the market value of the article at the time and place where it should have been delivered. A statement in the affidavit on which the attachment is granted, that the plaintiffs, in reliance upon the contract, sold the goods for future delivery for $9,060.20 in advance of the price which they had agreed to pay the defendant therefor, does not comply with the requirement of the Code, as that sum is not the correct measure of damages — unless it appears that there was no market price for the article at the time and place of delivery; in which case such measure of damages might apply."

Under the rules of law as thus defined has the plaintiff established that a certain sum is due for the breach of this contract? I apprehend that it will not be questioned that primarily the measure of damage for the breach of the contract is the difference between the price named in the contract and the market value of the article named — the price at which it could be obtained by the plaintiff from other dealers. The plaintiff, upon the breach of the contract

by the defendants, is bound to seek the goods in other markets, and it is only upon his failure to find them there that he can recover any special damages as loss of profits. There is no attempt to claim in the affidavit presented that lime of equal quality could not have been obtained from other dealers, and the contracts of the plaintiff have been fulfilled with the lime so obtained. Without such an allegation proof of loss of profits upon this contract becomes wholly immaterial, and establishes no sum as due and owing from the defendant to the plaintiff for breach of the contract. Within the authorities cited, therefore, we think that the plaintiff has failed to make proof of any damages caused by the breach by the defendants of their contract, and that the attachment cannot be sustained.

The order should, therefore, be reversed.

All concurred.

Order reversed, with ten dollars costs and disbursements, and motion to vacate granted, with ten dollars costs, without prejudice to any other application, upon payment of costs.